```
JEFFREY F. KELLER (SBN 148005)
KELLER GROVER, LLP
425 Second Street, Suite 500
San Francisco, California 94107
Telephone: (415) 543-1305
Facsimile: (415) 543-7861
jfkeller@kellergrover.com

JOHN G. JACOBS (pending PRO HAC VICE)
BRYAN G. KOLTON (pending PRO HAC VICE)
THE JACOBS LAW FIRM, CHTD.
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 427-4000
Facsimile: (312) 427-1850
jgjacobs@thejacobslawfirm.com
bgkolton@thejacobslawfirm.com
```

Attorneys for Plaintiff and the Putative Class

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD KAZEMI, individually and on behalf of a class of similarly situated individuals, | Case No. CV 09 5142 |
| Plaintiff, | CLASS ACTION |
| v. | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| PAYLESS SHOESOURCE, INC., a Missouri corporation, COLLECTIVE BRANDS, INC., a Delaware corporation, and VOICE-MAIL BROADCASTING CORPORATION d/b/a VOICE & MOBILE BROADCAST CORPORATION a/k/a VMBC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## CLASS ACTION COMPLAINT

Plaintiff Mohammad Kazemi brings this class action complaint against defendants Payless Shoesource, Inc., Collective Brands, Inc. (collectively "Payless") and Voice-Mail Broadcasting Corporation d/b/a Voice & Mobile Broadcast Corporation a/k/a VMBC ("VMBC") and alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### NATURE OF THE CASE

1. In an effort to promote the sales of its shoe lines, Payless, one of the largest retailers of family footwear world-wide, along with its agent VMBC, engaged in an especially pernicious form of marketing: the transmission of unauthorized advertisements, in the form of "text message" calls to the cellular telephones of consumers across the nation.

2. By effectuating these text message calls (hereinafter, "wireless spam" or "SMS Spam"), defendants have caused such consumers actual harm, not only because consumers were subjected to the aggravation and invasion of privacy that necessarily accompanies unsolicited wireless spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such wireless spam.

3. Plaintiff, on behalf of himself and a nationwide class of similarly situated persons, brings this suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), which prohibits unsolicited text calls to cell phones.

4. Plaintiff and the Class seek injunctive relief and an award of statutory damages, together with costs and reasonable attorney's fees.

### PARTIES

5. Plaintiff Mohammad Kazemi is a citizen of San Jose, California.

6. Defendant Payless Shoesource, Inc. is one of the largest footwear retailers in the world, with over 4,500 retail shoe stores in 16 countries and territories. Payless Shoesource, Inc. is a Missouri corporation with its principal place of business in Topeka, Kansas. It does business

throughout the United States and California, including San Francisco County. Payless Shoesource, Inc. is a business unit of defendant Collective Brands, Inc.

7. Defendant Collective Brands, Inc. is a self-proclaimed "leader in bringing compelling lifestyle, fashion and performance brands for footwear and related accessories to consumers worldwide" and operates retail shoe stores through its business units, including through defendant Payless Shoesource, Inc. Collective Brands, Inc. is a Delaware corporation with its principal place of business in Topeka, Kansas. It does business throughout the United States and California, including San Francisco County.

8. Defendant Voice-Mail Broadcasting Corporation d/b/a Voice & Mobile Broadcast Corporation a/k/a VMBC is a self-proclaimed "industry leading SMS provider of standard and premium rate SMS services" that makes SMS text message calls on behalf of its clients, including Payless. VMBC is the owner of the shortcode "242424," the telephone number from which the text message calls that are the subject of this suit are alleged to have originated. VMBC is a California corporation, with its principal place of business in Irvine, California. It does business throughout the United States and California, including San Francisco County.

## JURISDICTION

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

## VENUE

10. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c).

## FACTS

11. In recent years, marketers, who often have felt stymied by federal or state laws limiting solicitations over residential telephones, facsimile machines, and e-mails, have looked to alternative technologies through which to send bulk solicitations cheaply.

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**
-3-

12. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 or so characters.

13. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone typically rings, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

14. Unlike more conventional solicitations, wireless spam actually costs its recipients money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or for a text plan that includes a specified number of messages, regardless of whether or not the message is authorized.

15. In recent months, defendants and their agents, using an automatic telephone dialing system, caused mass amounts of wireless spam calls to be made to the cell phones of consumers across the country, advertising various Payless shoe sales and promotions.

16. On or about September 29, 2009, Plaintiff's cell phone rang, indicating that a text call was being received. The "from" field of the transmission was identified cryptically as "242-424," a format which Plaintiff later learned was an abbreviated telephone number known as an SMS short code. That short code is owned by VMBC and licensed to Payless and its agents for use in their SMS text messaging promotional campaigns.

17. The body of the text message Plaintiff was sent read:

> PSST ...Payless Insider, Ur the 1st to know BOGO starts TODAY 9/29! bUY 1 Get One 1/2 off EVERYTHING 866-746-5923 or END3 to Opt-Out Txt fees apply Not @ Shopko

18. On at least two other occasions in the twelve months prior to September 29, 2009, Plaintiff received similar text message spam calls from Defendants advertising Payless shoe sales and promotions.

19. At no time did Plaintiff give prior express consent to the receipt of such wireless spam text message calls from defendants and/or their agents.

20. Indeed, after receiving one such unsolicited wireless text message spam call, Plaintiff called Payless and asked them to stop calling him and to take his number off its list. Defendants, nonetheless, proceeded to call his number with their wireless text message spam.

21. On or about June 28, 2009, Plaintiff also registered his cell phone number on the National Do Not Call Registry maintained by the federal government.

## CLASS ALLEGATIONS

22. Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b) on behalf of himself and the following Class (the "Class"): all persons in the United States who, within four years prior to the filing of this lawsuit, received one or more text messages from Defendants advertising Payless shoe promotions; provided however, that defendants and any officers or directors of defendants are excluded from the Class.

23. Additionally, Plaintiff brings this action on behalf of a sub-class (the "Sub-Class"), consisting of all class members who received more than one text message from or on behalf of Defendants advertising Payless shoe promotions within any 12-month period.

24. The Classes and Sub-Class consist of thousands of individuals and other entities who are geographically dispersed making joinder impractical, in satisfaction of FRCP 23(a)(1). The exact size of the respective classes and identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to their SMS transaction records.

25. The claims of Plaintiff are typical of the claims of the respective class members. The claims of the Plaintiff and the respective class members are based on the same legal theories

and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiff and the respective class members.

26. The respective classes have a well-defined community of interest. The Defendants have acted and failed to act on grounds generally applicable to the Plaintiff and the respective class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the respective class members.

27. There are many questions of law and fact common to the claims of Plaintiff and the respective class members, and those questions predominate over any questions that may affect only individual class members within the meaning of FRCP 23(a)(2) and 23(b)(2).

28. Common questions of fact and law affecting members of the Class include, but are not limited to, the following:

    (a) Whether Defendants' conduct violates 47 U.S.C. § 227(b)(1)(A);

    (b) Whether Plaintiff and members of the Class are entitled to damages, costs and/or attorney's fees from defendants;

    (c) Whether Plaintiff and members of the Class are entitled to treble damages based on the willfulness of defendants' conduct; and

    (d) Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining defendants from continuing to engage in their unlawful conduct.

29. Common questions of fact and law affecting members of the Sub-Class include, but are not limited to, the following:

    (a) Whether Defendants' conduct violates 47 U.S.C. § 227(c)(5);

    (b) Whether Plaintiff and members of the Sub-Class are entitled to damages, costs and/or attorney's fees from defendants;

    (c) Whether Plaintiff and members of the Sub-Class are entitled to treble damages based on the willfulness of defendants' conduct; and

(d) Whether Plaintiff and members of the Sub-Class are entitled to a permanent injunction enjoining defendants from continuing to engage in their unlawful conduct.

30. Absent a class action, most of the respective class members would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

31. Plaintiff will fairly and adequately represent and protect the interests of the respective class members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the respective class members, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the respective class members.

## FIRST CAUSE OF ACTION

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A))**

**[On Behalf of the Class]**

32. Plaintiff incorporates by reference the foregoing allegations.

33. Defendants made, or caused to be made, text calls to Plaintiff and the Class using an automatic telephone dialing system, within the meaning of 47 U.S.C. § 227(a). The equipment used by defendants had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. By using such equipment, defendants were able to make thousands of text calls to consumers automatically without human intervention.

34. These calls were made *en masse* and without the prior express consent of Plaintiff and the other members of the Class.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
-7-

35. Defendants have, therefore, violated the TCPA, 47 U.S.C. 227(b)(1)(A)(iii), which makes it "unlawful for any person within the United States… to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice… to any telephone number assigned to a… cellular telephone."

36. As a result of defendants' illegal conduct, Plaintiff and the Class suffered actual damages and, under section 227(b)(3)(B), are each entitled, *inter alia,* to a minimum of $500.00 in damages for each such violation of the TCPA.

37. To the extent defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to section 227(b)(3)(C), treble the amount of statutory damages recoverable by the members of the Class.

## SECOND CAUSE OF ACTION

**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5))**

**[On Behalf the Sub-Class]**

38. Plaintiff incorporates by reference the foregoing allegations.

39. 47 U.S.C. §227 (c) provides that any person "who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may," bring a private action based on a violation of said regulations, which regulations were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

40. The Telephone Consumer Protection Act's implementing regulation, 47 C.F.R. §64.1200 (c), provides that "No person or entity shall initiate any telephone solicitation" to "(1) Any residential telephone subscriber before the hour of 8 a. m. or after 9 p. m. (local time at the called party's location), or (2) A residential telephone subscriber who has registered his or her telephone number on the national do- not- call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

41. 47 C.F.R. §64.1200 (d) further provides that "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> **(1) Written policy.** Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> **(2) Training of personnel engaged in telemarketing.** Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> **(3) Recording, disclosure of do-not-call requests.** If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do not- call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do- not- call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.
>
> **(4) Identification of sellers and telemarketers.** A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> **(5) Affiliated persons or entities.** In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> **(6) Maintenance of do-not-call lists.** A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A

do-not-call request must be honored for 5 years from the time the request is made.

\* \* \*

42. 47 C.F.R. §64.1200 (e), provides that §64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03- 153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which Report and Order in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

43. Defendants violated § 64.1200(c) by initiating telephone solicitations to wireless telephone subscribers, such as Plaintiff and the Sub-Class, who registered their respective telephone numbers on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government and who requested not to receive calls from Defendants, as set forth in § 64.1200(d)(3).

44. Defendants violated § 64.1200 (d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the Sub-Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them, and in particular by (1) failing to have a written policy for maintaining a do-not-call list; (2) failing to inform and train telemarketing personnel in the existence and use of the do-not-call list; (3) failing to record do not-call requests and place called parties' names, if provided, and telephone numbers on the do not- call list at the time the request is made; (4) failing to honor called parties' do- not- call requests within a reasonable time from the date such request is made and no later than thirty days from the date of such request; and/or (5) failing to provide called parties with the name of the individual caller, the name of the

person or entity on whose behalf the call is being made, and a working telephone number or address at which the person or entity may be contacted.

45. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Sub-Class received more than one telephone call within any 12-month period by or on behalf of the Defendants in violation of 47 C.F.R. § 64.1200, as described above.

46. As a result of Defendants' conduct as alleged herein, Plaintiff and the Sub-Class suffered actual damages and, under section 47 U.S.C. section 227(c), are each entitled, inter alia, to receive up to $500.00 in damages for such violations of § 64.1200.

47. To the extent defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to section 227(c)(5), treble the amount of statutory damages recoverable by the members of the Class.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class and sub-class, request the following relief:

1. That the Court enter an order certifying the Class and Sub-Class and appointing Plaintiff as the representative of the Class and Sub-Class, and appointing counsel for Plaintiff as lead counsel for the respective classes;

2. That the Court enter an order declaring that the actions of Defendants, as set out above, as well as in other respects, violate the law in the respects alleged;

3. That the Court enter judgment against Defendants for actual and statutory damages, and if its conduct is proved willful, award Plaintiff and the class treble and exemplary damages;

4. That the Court award Plaintiff and the classes their costs and expenses, as well as reasonable attorneys' fees, in prosecuting this action;

5. That the Court award Plaintiff and the Classes post-judgment interest;

6. That the Court issue an injunction prohibiting Defendants from continuing their conduct complained of herein; and

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
-11-

7. That the Court award such other and further relief as may be necessary or appropriate.

Respectfully submitted,

**KELLER GROVER, LLP**

Dated: October 29, 2009    By: _____
Jeffrey Keller

Attorneys for Plaintiff
and the Putative Class and Sub-Class

## JURY DEMAND

Plaintiff demands trial by jury on all counts for which a jury trial is permitted.

Respectfully submitted,

**KELLER GROVER, LLP**

Dated: October 29, 2009          By: _____
                                     Jeffrey Keller

Attorneys for Plaintiff
and the Putative Class and Sub-Class

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF