1   JEFFREY F. KELLER (SBN 148005)
    CAREY G. BEEN (SBN 240996)
2   **KELLER GROVER, LLP**
    1965 Market Street
3   San Francisco, California  94103
    Telephone:  (415) 543-1305
4   Facsimile: (415) 543-7861
    jfkeller@kellergrover.com
5   cbeen@kellergrover.com

6   JOHN G. JACOBS (*PRO HAC VICE*)
    BRYAN G. KOLTON (*PRO HAC VICE*)
7   **JACOBS KOLTON, CHTD.**
    122 South Michigan Avenue, Suite 1850
8   Chicago, Illinois 60603
    Telephone: (312) 427-4000
9   Facsimile: (312) 427-1850
    jgjacobs@jacobskolton.com
10  bgkolton@jacobskolton.com

11  Attorneys for Plaintiff and the Class

12                **IN THE UNITED STATES DISTRICT COURT**

13                **NORTHERN DISTRICT OF CALIFORNIA**

14  MOHAMMAD KAZEMI, individually and on            )   Case No.  3:09-CV-05142-EMC
    behalf of a class of similarly situated individuals,  )
15                                                  )   CLASS ACTION
                        Plaintiff,                  )
16                                                  )   **PLAINTIFF'S (CORRECTED)**
            v.                                      )   **NOTICE OF MOTION AND**
17                                                  )   **MOTION FOR FINAL APPROVAL**
    PAYLESS SHOESOURCE, INC., a Missouri            )   **OF CLASS ACTION SETTLEMENT**
18  corporation, COLLECTIVE BRANDS, INC.,           )   **AGREEMENT; MEMORANDUM**
    a Delaware corporation, and VOICE-MAIL          )   **OF POINTS AND AUTHORITIES**
19  BROADCASTING CORPORATION d/b/a                  )   **IN SUPPORT**
    VOICE & MOBILE BROADCAST                        )
20  CORPORATION a/k/a VMBC,                         )   Location: Courtroom 5, 17th Floor.
                                                    )   450 Golden Gate Avenue
21                      Defendants.                 )   San Francisco, California 94102
                                                    )   Date: March 23, 2012
22                                                  )   Time:  1:30 p.m.
                                                    )
23                                                  )
                                                    )   The Honorable Edward M. Chen
24                                                  )

25

26

27

28

---

PLAINTIFF'S (CORRECTED) NOTICE OF MOTION AND MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT
                                                    Case No. 3:09-CV-05142-EMC

1

## <u>NOTICE OF MOTION AND MOTION</u>

2      PLEASE TAKE NOTICE that on March 23, 2012, at 1:30 p.m., or at such other time as

3  the Court may set, the undersigned will appear before the Honorable Edward M. Chen in

4  Courtroom 5, 17th Floor at the United States Courthouse at 450 Golden Gate Avenue, San

5  Francisco, California, and then and there move the Court, pursuant to Federal Rule of Civil

6  Procedure 23(e), to provide final approval of the proposed class action settlement in this matter.

7      Plaintiff makes this motion on the grounds that the settlement is fair, reasonable and

8  adequate.  The Motion is based on this Notice of Motion and Memorandum of Points

9  and Authorities in Support Thereof, the declaration of the mediator, The Honorable Nicholas H.

10  Politan (ret.), the declarations of Class Counsel, the declaration of the Settlement Administrator,

11  oral argument of counsel, the complete file and record in this action, and such additional matters

12  as the Court may consider.

13

14  Dated: February 17, 2012                    Respectfully Submitted,

15                                               MOHAMMAD KAZEMI, individually and on
                                                 behalf of a class of similarly situated individuals,
16

17                                                _/s/ John G. Jacobs_____ _____

18                                               John G. Jacobs (*Pro Hac Vice*)
                                                 Bryan G. Kolton (*Pro Hac Vice*)
19                                               JACOBS KOLTON, CHTD.
                                                 122 South Michigan Avenue
20                                               Suite 1850
                                                 Chicago, Illinois 60603
21
                                                 Jeffrey F. Keller (SBN 148005)
22                                               Carey G. Been (SBN 240996)
                                                 KELLER GROVER, LLP
23                                               1965 Market Street
                                                 San Francisco, California 94103
24

25

26

27

28

PLAINTIFF'S (CORRECTED) NOTICE OF MOTION AND MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

### Table of Contents

I.      INTRODUCTION ................................................................................................ 1

II.     TERMS OF THE SETTLEMENT .................................................................... 5

III.    THE CLASS NOTICE COMPORTS WITH DUE
        PROCESS AND RULE 23 ................................................................................. 5

IV.     THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 7

        A.  *The Strength Of The Plaintiffs' Case* ................................................. 9

        B.  *The Risk Of Continued Litigation* ..................................................... 12

        C.  *The Risk Of Maintaining Class Action Status* .................................. 13

        D.  *The Amount Offered In The Settlement* ............................................. 13

        E.  *The Extent Of Discovery Completed And The Stage Of The Litigation* ........... 14

        F.  *The Experience And Opinion Of Counsel* .......................................... 15

        G.  *The Absence Of Collusion Supports Approval* ................................... 16

        H.  *The Presence Of A Governmental Participant* ................................... 16

        I.  *The Reaction of Class Members* ......................................................... 17

V.      CONCLUSION ................................................................................................. 18

ii

# Table of Authorities

**Cases:**                                                                   **Page(s):**

*Byrd v. Civil Serv. Comm'n,*
        459 U.S. 1217 (1983) ...................................................................... 7, 8

*Churchill Village, LLC v. Gen Elec.,*
        361 F.3d 566 (9th Cir. 2004)................................................... 6, 7, 17

*Class Plaintiffs v. City of Seattle,*
        955 F.2d 1268 (9th Cir. 1992)...................................................... 8, 16

*Garner v. State Farm Mut. Auto. Ins. Co.,*
        2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................... 8, 9, 12, 15, 16

*In re Bluetooth Headset Products Liab. Litig.,*
        654 F.3d 935 (9th Cir. 2011)............................................................. 16

*In re OmniVision Tech. Inc.,*
        559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................. 8, 12, 13, 14, 15

*Kazemi v. Payless Shoesource, Inc.,*
        2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ................................... 9

*Kent v. Hewlett-Packard Co.,No.*
        2011 WL 4403717 (N.D. Cal. Sept. 20, 2011)................................. 17

*Leckler v. Cashcall, Inc.,*
        2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ................................. 11

*Lewis v. Starbucks Corp.,*
        2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ................................... 8

*Lipuma v. Am. Express Co.,*
        406 F.Supp. 2d 1298 (S.D. Fla. 2005).................................... 12, 14

*Molski v. Gleich,*
        318 F.3d 937 (9th Cir. 2003)............................................................. 8

*Mullane v. Central Hanover Bank & Trust Co.,*
        339 U.S. 306 (1950) ............................................................................ 6

*Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.,*
        221 F.R.D. 523 (C.D. Cal. 2004) ............................................ 15, 17

*Officers for Justice v. Civil Serv. Comm'n,*
        688 F.2d 615 (9th Cir. 1982)............................................................. 13

iii

*Protective Comm. for Indep. Stockholders v. Anderson.*,
    390 U.S. 414 (1968) ....................................................................................... 9

*Rodriguez v. West Publishing Corp.*,
    563 F.3d 948 (9th Cir. 2009) .............................................................. 15, 16

*Satterfield v. Simon & Schuster*,
    569 F.3d 946, 950 (9th Cir. 2009) ................................................................ 9

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1994) ........................................................................ 6

*Wren v. RGIS Inventory Specialists*,
    2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .............................................. 17

**Statutes & Regulations:**

    28 U.S.C. § 2342 ........................................................................................ 11

    28 U.S.C. § 1715 ........................................................................................ 16

    47 U.S.C. § 227 *et seq.* ....................................................... 1, 9, 10, 12, 14

    47 C.F.R. § 64.1200 ..................................................................................... 3

    47 C.F.R. § 1200(f)(1) ............................................................................... 10

**Miscellaneous:**

    Fed. R. Civ. P. 23(c)(1)(C) ........................................................................ 13

    Fed. R. Civ. P. 23(c)(2)(B) ...................................................................... 6, 7

    Fed. R. Civ. P. 23(e)(1) ................................................................................ 5

iv

# I.      INTRODUCTION

In October 2009, Plaintiff initiated this class action asserting that the text-message marketing campaign employed by Defendants to promote the sales of Payless's shoe lines to millions of consumers nationwide constituted a violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* (See Docket Number ("Dkt. No." 1).  Plaintiff alleged that Defendants utilized an "automatic telephone dialing system" ("ATDS") to send text message advertisements to the cell phones of consumers who had not previously given their "prior express consent" to such text messages, some of whom had their telephone numbers registered on Do Not Call lists, and sought injunctive relief and statutory damages.  *(Id.)*  In response, Defendants moved to dismiss.  (Dkt. No. 20)  After lengthy briefing and argument, the Court denied the Defendants' Motion to Dismiss (Dkt. No. 36) and Defendants answered the Complaint.  (Dkt. No. 35)  The Parties then commenced discovery, but also agreed to try resolving the dispute through mediation under the supervision of Judge Nicholas H. Politan (ret.).  The Parties participated in two full days of mediation, and at the conclusion of the second session, reached an agreement in principle on the settlement of the lawsuit and executed a memorandum of understanding at that time.  (Jacobs Fee Decl.[1]  ¶¶ 13-16.) A few months later, a formal settlement agreement was executed.  *(Id.* ¶ 17.)

Following presentation of the settlement agreement to the Court (Dkt. No. 53), Judge Patel requested supplemental briefing on specified points, which the Parties supplied (Dkt. Nos. 61 and 63).  Following transfer to Judge Chen, additional briefing was requested and supplied by the Parties (Dkt. Nos. 70 and 72), a corrected Settlement Agreement was filed with the Court (Dkt No. 71), and a hearing was held on August 19, 2011 (Dkt. No. 74), followed by the filing of a second corrected Settlement Agreement with the Court.  (Dkt. No. 75)  On September 6, 2011, the Court

---

[1]   In connection with the Motion For Approval Of Attorneys' Fees And Expenses And Class Representative Incentive Award (Docket No. 79), class counsel John G. Jacobs attached his Declaration.   That declaration, dated October 13, 2011, is referred to herein as "Jacobs Fee Decl." In connection with the instant motion for final approval of the settlement, Mr. Jacobs has submitted a second declaration (attached hereto), referred to herein as "Jacobs Final App. Decl."

granted preliminarily approval of the settlement, certified the Settlement Class, approved the

manner and form of notice to the class, directed the Parties to implement the notice plan giving an

opportunity for class members to opt out of the settlement or object to any of its terms (including

attorneys' fees and expenses or incentive awards to the representative plaintiff, all of which were

clearly disclosed), and set a date for the final approval hearing.  (Dkt. No. 76.)   On October 13,

2011, Class Counsel filed their Motion For Award of Attorneys' Fees And Expenses and Class

Representative Incentive Award.  (Dkt. No. 79.)  Class Counsel thereafter worked with Payless

and the settlement administrator, Heffler, Radetich & Saitta LLP of Philadelphia, Pennsylvania, to

ensure that notice was properly distributed, fielded inquires from class members regarding

settlement details and aided class members in the claims process.  (Jacobs Fin. App. Decl. ¶ 3.)[2]

On February 10, 2012, the Parties filed a stipulation to continue the hearing date for final approval

to March 23, 2012  to accommodate the travel needs of defense counsel (Dkt. No. 82), which the

Court signed into Order on February 14, 2012.  (Dkt. No. 83).  Pursuant to that Order, the new

hearing date was posted on the settlement website maintained by the Settlement Administrator,

www.paylesstextsettlement.com, and Payless restored the link on its own website,

www.payless.com, directing class members to the settlement website where the first item listed is

a prominent notice of the change of the final approval hearing date.  (Hamer Decl. ¶ 6); (Jacobs

Final App. Decl.  ¶11.)

        The court-approved five-part notice plan has now been successfully implemented, CAFA

notice has been provided to various governmental agencies, and a press release announcing the

settlement has been issued by Class Counsel reminding class members of the filing deadline.

(Jacobs Final App. Decl. ¶¶ 3-6, 14 .)   The deadline for submitting exclusions and objections has

now passed and given the terms of the settlement, it is not surprising that there has been not a

---

[2]  Detailed descriptions of the litigation history, which for efficiency will not be repeated here, have been summarized in Plaintiff's Motion for Preliminary Approval (Dkt. No. 53) and Motion For Award of Attorneys' Fees and Expenses (Docket No. 79).

- 2 -

1  single objection to the settlement and only one opt-out.  (Jacobs Decl. ¶ 14; Hamer Decl. ¶ 9.)

2  Furthermore, over 22,500 claims have been filed.  (Hamer Decl. ¶ 8.)

3      As a result of this settlement, every settlement class member obtains the relief that he or

4  she will never again receive a text message from Payless (unless they want to, in which case they

5  will have to specifically text Payless and request receipt of such text offers, with what is known as

6  a double opt-in requirement). That alone makes the litigation a success.  The Settlement directs

7  that Payless (a) not use any list of cell phone numbers it compiled prior to October 4, 2010[3] nor

8  select numbers off of any such list for the purpose of sending any text messages to such numbers;

9  (b) comply with the TCPA and Federal Communications Commission ("FCC") regulations, 47

10  C.F.R. § 64.1200, as applicable to the sending of future SMS text messages; (c) require any entity

11  through whom it causes SMS text messages to be sent to customers to compare any number to

12  which it wishes to send a text message to Payless's internal Do Not Call list and/or any other Do

13  Not Call list maintained by or on behalf of Payless, and to the listing of persons who have texted

14  Payless to stop before any text messages are sent; (d) not send or allow to be sent any further text

15  messages to a customer whose cellular telephone number appears on any such stop or Do Not Call

16  list, unless and until Payless obtains that customer's prior express consent authorizing Payless to

17  resume sending the customer text messages; and (e) provide training to its affected personnel on

18  compliance with the requirements of the TCPA and the FCC regulations with respect to text

19  messaging.  That relief alone is significant -- not only because the class will no longer be subjected

20  to the aggravation and invasion of privacy that accompanies unsolicited text messages, but also

21  because they will no longer have to pay their service providers for receipt of such messages -- and,

22  without more, would justify approval of the settlement as fair, reasonable and adequate.

23      But that is not the only relief provided.  Each class member that submitted a valid claim

24  will also receive a fully transferrable Merchandise Certificate with a face value of $25 that can be

25  used to obtain *any* items sold by Payless (e.g., shoes, socks, shoelaces, make-up, jewelry,

26  _____

27  [3]  That is the date upon which Payless implemented its requirement of a double opt-in for obtaining numbers for its texting campaigns.

28

1   handbags, purses, belts, hats, scarves, accessories, sunglasses, umbrellas, wallets and backpacks,

2   etc.) offered at any of Payless's 3,800 stores throughout the United States, at any time up to 12

3   months from the date of issuance.   As has been extensively discussed in prior briefing, the

4   Merchandise Certificates can be combined with gift cards or certificates, do not require the

5   purchase of any particular product or the expenditure of *any* money, and are worth more than

6   enough to cover the entire cost of one or more pair of shoes, accessories, and non-footwear items.

7   (Dkt. No 73.)[4]   And this settlement contains a particularly important provision:  To the extent the

8   dollar value of *redeemed* Merchandise Certificates is less than $5 million (under the settlement,

9   Payless is required to track the dollar amount of certificates actually redeemed), Payless will make

10  a Cy Pres Contribution in an amount equal to the difference between the amount redeemed and $5

11  million to tax exempt charities approved by the Court in the form of Merchandise Certificates with

12  a face value of $15.   (Jacobs Final App. Decl. ¶ 7.)  Based on past experience with the "Payless

13  Gives Shoes for Kids" charitable campaign, about 85 percent of such merchandise certificates are

14  redeemed within three months.  (Dkt. No 73.)  Per the Court's urgings, the Merchandise

15  Certificates donated will have a six-month life.   (Second Corrected Settlement Agreement, ¶ 7;

16  Docket No. 75.)

17          In addition, Payless has already paid the full costs of providing notice to the class, has and

18  continues to pay Settlement Administrator administration expenses, and has agreed to pay an

19  incentive award to Plaintiff for serving as class representative and Class Counsel's attorneys' fees

20  and expenses up to a specified amount ($1,250,000 in fees and $20,000 in expenses, as awarded

21  by the Court).   Payment of these items by Payless under the settlement is in addition to the

22  benefits provided to the Settlement Class and will not reduce the benefits available to the

23  Settlement Class or the recipient charities.  In other words, such fees and costs will not be

24  deducted from the class's recovery, as is often the case in class action settlements.

25  _____

26  [4]  The average price at which footwear and non-footwear inventory items were offered for sale at Payless stores
    located in the United States as of the end of June 2011 was significantly below the $25 amount of the Merchandise
27  Certificates.  As of the end of June 2011, the average price at which footwear items were offered for sale was less than
    the amount of the Merchandise Certificates.  *(Id.)*

28                                                    - 4 -

1     Therefore, as a result of this settlement, Payless's practice of texting unsuspecting and

2     unconsenting customers will stop, and Payless will pay substantially in excess of $5 million

3     dollars to the class (directly and indirectly via *cy pres*, costs of notice and administration,

4     attorney's fees, etc.).   The deterrent effect of a such a result is difficult to monetize, but of

5     tremendous importance in causing other companies considering a texting program to consider how

6     they may do so without  running afoul of the law and subjecting their companies to substantial

7     exposure.   (Jacobs Final App. Decl. ¶ 13.)

8     Given the potential hurdles facing Plaintiff in this litigation, the settlement as a whole is

9     fair, reasonable, and adequate, and merits the Court's final approval.  Plaintiff thus respectfully

10    requests that the Court now grant final approval of the settlement, and award Class Counsel the

11    requested attorneys' fees and expenses and Class Representative the requested incentive award.

12    **II.      TERMS OF THE SETTLEMENT**

13    The terms of the settlement preliminarily approved by the Court, which are set forth in the

14    (second corrected) Settlement Agreement (Dkt. No. 75), insofar as concerns benefits conferred

15    upon the class have been described above (and in prior filings) and will not be repeated here.

16    Should the Court grant final approval of the Settlement, and after the time for appeal has

17    expired, Plaintiff and each and every member of the Settlement Class who has not timely filed a

18    request to be excluded (or who has rescinded a previous opt-out request pursuant to the Settlement

19    Agreement), will release and forever discharge Defendants from any and all manner of claims,

20    whether known or unknown, involving the sending or alleged sending of SMS text messages to

21    persons by or on behalf of Payless ShoeSource, Inc. from October 29, 2005 through October 4,

22    2010 that were or could have been alleged or asserted in the lawsuit relating to such text messages.

23    (*See* Dkt. No. 75 ¶¶ 18-22 for the full Release language).  The Release is tailored to the allegations

24    of the litigation and is appropriate.

25    **III.     THE CLASS NOTICE COMPORTS WITH DUE PROCESS AND RULE 23**

26    Before final approval of a class action can issue, notice of the settlement must be provided

27    to the class.  Fed. R. Civ. P. 23(e)(1).  Rule 23 requires that the class receive "the best notice

28    practicable under the circumstances, including individual notice to all members who can be

-5-

1  identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Actual notice, however, is not

2  required. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). Notice to the class must be

3  "reasonably calculated under all the circumstances, to apprise interested parties of the pendency of

4  the action and afford them an opportunity to present their objections." *Mullane v. Central*

5  *Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Not only must notice of a class action

6  settlement be properly disseminated to the class, its content must also "generally describe[] the

7  terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and

8  come forward to be heard." *Churchill Village, LLC v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir.

9  2004).  Rule 23(c)(2)(B) requires that the notice clearly, and in concise, plain, easily understood

10  language state: (a) the nature of the action; (b) the definition of the class certified; (c) the class

11  claims, issues, or defenses; (d) that a class member may enter an appearance through an attorney if

12  he or she desires; (e) that the court will exclude any member of the class upon request; (f) the

13  method and time to request exclusion; and (g) that the judgment will be binding on class members.

14       In the Preliminary Approval Order, the Court previously approved, as to form, manner and

15  content, the Notice Plan specified in the Settlement Agreement and found that the manner and

16  method of distribution of the Class Notice and Claim Form (as revised) was the "best notice

17  practicable under the circumstances and that it constitutes due and sufficient notice to all persons

18  entitled thereto and complies fully with the requirements of the Federal Rules of Civil Procedure

19  and of Due Process." (Dkt. 76, ¶ 8.)  The Parties and the Settlement Administrator have fully

20  implemented the directives of that Order and complied with the notice plan. (Hamer Decl. ¶ ¶ 2-7;

21  Jacobs Final App. Decl. ¶¶ 3-5. )

22       The Settlement Agreement contemplated, and the Parties and Settlement Administrator

23  executed, a five-part notice plan designed to reach as many potential settlement class members as

24  possible through reasonable effort.  (Dkt. No. 75 1 ¶ 4; Hamer Decl. ¶ ¶ 2-7.)  <u>First</u>, direct notice

25  of the settlement was sent via email to those class members for whom Payless or VMBC had

26  email addresses.  (Dkt. No. 75 ¶ 4a)  By September 19, 2011, email notices in the form called for

27  by the Settlement Agreement and Preliminary Approval Order were sent to some 1.8 million  class

28  members.  (Hamer Decl. ¶ 5.)  Second, by  September 19, 2011, the Settlement Administrator

Case3:09-cv-05142-EMC   Document85   Filed02/21/12   Page12 of 24

launched and thereafter administered a settlement website at www.paylesstextsettlement.com ,

serving as the "long-form" notice, which provided links to the settlement agreement, the claim

form, and other relevant Court documents, contained answers to Frequently Asked Questions,

provided for the online submission of claims and was supported with internet advertising in the

form of Google AdWords keyword searching, which aided in directing potential members of the

Settlement Class to the settlement website.  (Dkt. No. 75 ¶ 4b; Hamer Decl. ¶ 6.)  <u>Third</u>, Payless

included on the landing page for www.payless.com, above the global links appearing at the bottom

of the screen, a conspicuous notice announcing the settlement of the text messaging class action

lawsuit and provided a link to the settlement website, as well as the toll-free number of the

Settlement Administrator.   (Dkt. No. 75 ¶ 4c; Jacobs Final App. Decl. ¶ 5.)  <u>Fourth</u>, Payless

provided In-Store notice throughout the notice period by posting in all of its stores in the United

States in a prominent location as close to its cash registers as practical (and clearly and

conspicuously visible from the cash register) posters announcing the settlement of the text

messaging class action lawsuit.  (Dkt. No. 75 ¶ 4d; Jacobs Final App. Decl. ¶ 5.)  <u>Fifth</u>, Payless

provided notice on all of its U.S. store register receipts, announcing the settlement and providing

information to a link to the settlement website, as well as the toll free number of the Settlement

Administrator.   (Dkt. No. 75 ¶ 4e; Jacobs Final App. Decl. ¶ 5.)   During the notice period, over

20 million receipts containing notice of the settlement were provided by Payless to customers.

(*Id*.)

In addition, Payless provided notice of the settlement to appropriate federal and state

officials under CAFA (Dkt. No. 75 ¶ 35; Jacobs Final App. Decl. ¶ 14) and Class Counsel issued a

press release announcing the settlement.  (Dkt. No. 75 ¶ 34; Jacobs Decl. ¶ 10.)   This was

comprehensive and robust notice, and clearly the best practicable notice.  Thus, notice to the class

complied with the Preliminary Approval Order, Rule 23, and Due Process, and satisfied the

standard of the "best notice practicable under the circumstances."

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The law favors the compromise and settlement of class action suits.  *See, e.g., Byrd v. Civil*

*Serv. Comm'n,* 459 U.S. 1217 (1983); *Churchill Village,* 361 F.3d at 576; *Class Plaintiffs v. City*

- 7 -

APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT          Case No. 3:09-CV-05142-EMC

1  *of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Under Federal Rule of Civil Procedure 23(e),

2  "[t]he court must approve any settlement, voluntary dismissal, or compromise of the claims, issues

3  or defenses of a certified class" and such approval may occur "only after a hearing and on finding

4  that the settlement, voluntary dismissal, or compromise is fair, reasonable, and adequate."  Fed. R.

5  Civ. P. 23; *In re OmniVision Tech. Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (citing

6  *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)).   A settlement is fair, reasonable, and

7  adequate where, as here, "the interests of the class are better served by the settlement than by

8  further litigation." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV-08-1365-CW, 2010 WL

9  1687832, *8 (N.D. Cal. Apr. 22, 2010) (quoting MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.61

10 (2004)).  While the Court has discretion in approving any settlement, "[i]n exercising this

11 discretion, this circuit has long deferred to the private consensual decision of the parties." *Garner*

12 *v. State Farm Mut. Auto. Ins. Co.*, No. CV-08-1365-CW, 2010 WL 1687832, *8 (N.D. Cal. April

13 22, 2010 (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)("We put a

14 good deal of stock in the product of an arms-length, non-collusive, negotiated resolution . . .")).

15        In determining whether a settlement agreement is fair, adequate, and reasonable, a district

16 court may consider some or all of the following non-exhaustive factors:

17              the strength of plaintiffs' case; the risk, expense, complexity, and likely
               duration of further litigation; the risk of maintaining class action status
18             throughout the trial; the amount offered in settlement; the extent of
               discovery completed, and the stage of the proceedings; the experience and
19             views of counsel; the presence of a governmental participant; and the
               reaction of the class members to the proposed settlement.
20

21 *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  While the Court may consider each of the

22 foregoing factors when considering the final approval of a class action settlement, "[i]n the Ninth

23 Circuit, a court affords a presumption of fairness to a settlement, if: (1) the negotiations occurred

24 at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are

25 experienced in similar litigation; and (4) only a small fraction of the class objected." *Lewis v.*

26 *Starbucks Corp.*, No. 07-cv-00490, 2008 WL 4196690, at *7 (E.D. Cal. Sept. 11, 2008) (citing

27 Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11:41 (4th Ed 2002)).  As

28                                              - 8 -

discussed above, the Settlement Agreement, to which there has been no objection, was reached after extensive arm's length negotiations and mediation under the supervision of a well-respected mediator, after a sufficient exchange of discovery, by experienced counsel with extensive experience with the TCPA and class actions.  Accordingly, the Court's analysis of the factors listed below should be examined with a presumption that the Settlement Agreement is fair.  In the instant case, each of these factors militates in favor of approving the settlement.

**A.     *The Strength of the Plaintiffs' Case***

The first step in assessing the fairness of a class action settlement is to examine "Plaintiff's likelihood of success on the merits and the range of possible recovery." *Garner,* 2010 WL 1687832, at *9; see also *Protective Comm. for Indep. Stockholders v. Anderson*, 390 U.S. 414, 424-25 (1968) ("Basic to [analyzing a proposed settlement] in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of the litigation.").  The analysis of Plaintiff's probability of success on the merits, however, is not rigid or beholden to any particular formula and "the Court may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."  *Garner*, 2010 WL 1687832, *9 (citing *Rodriguez*, 563 F.3d at 965).

In order to obtain a successful recovery on his First Cause of Action through litigation, Plaintiff would have needed to obtain certification of a litigation class pursuant to Rule 23(b)(3) and then prove at trial that Defendants made: (1) unauthorized calls, (2) to class members' cell phones, (3) using an ATDS, in violation of 47 U.S.C. § 227 (b)(1)(A)(iii).  *See* Dkt. 1; *Satterfield v. Simon & Schuster*, 569 F.3d 946, 950 (9th Cir. 2009) (citing 47 U.S.C. § 227(b)(1)(A)(iii)); *Kazemi v. Payless Shoesource, Inc*., No. C 09-5142, 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010).  In order to obtain a successful recovery on his Second Cause of Action through litigation, Plaintiff would have needed to obtain certification of a litigation subclass pursuant to Rule 23(b)(3) and then prove at trial that Defendants made: (1) two or more calls to each subclass member within a 12 month period; (2) in violation of the Do Not Call List regulations, by making "solicitation calls" to numbers registered on the national Do-Not-Call registry and by making calls made for "telemarketing purposes" without having "instituted procedures for maintaining a

-9-

1    list of persons who request not to receive telemarketing calls made by or on behalf of that person

2    or entity," *e.g.*, an internal Do-Not-Call list.  47 USC §227(c); 47 CFR §64.1200(c) and (d).

3         Defendants' Answer to the Complaint asserted thirty-five separate affirmative defenses.

4    (Dkt. No. 35.)  The affirmative defenses included that Plaintiff consented to receive the text

5    messages, that the text messages were not transmitted with an ATDS, that a text message is not a

6    "call" under the TCPA, that consumers must be charged for the text messages for the TCPA to

7    apply, that the TCPA is unconstitutional as violative of the First Amendment and Due Process

8    Clause, that Plaintiff was not injured, harmed or damaged, that Defendants had an established

9    business relationship with the class, that Defendants had established and implemented, with due

10   care, reasonable practices and procedures to effectively prevent telephone solicitations in violation

11   of the regulations, and that a litigation class or subclass could not be certified.  (*Id*.) Only one of

12   these defenses need gain traction with a judge or jury to defeat Plaintiff's claims.  And, if plaintiff

13   failed to obtain certification of a contested litigation class, the case would effectively be over.

14        In the instant case, there was considerable risk in proceeding with litigation.  With respect

15   to Plaintiff's First Cause of Action, Defendants disputed that the equipment used by VMBC on

16   behalf of Payless constituted an "automatic telephone dialing system" or ATDS as defined by the

17   TCPA and the FCC's rules, i.e., equipment that has "the capacity ... to store or produce telephone

18   numbers to be called, using a random or sequential number generator" and "to dial such numbers."

19   47 U.S.C. §227(a)(l) and 47 C.F.R. § 1200(f)(1).  In addition, unlike the few other TCPA text

20   messaging cases that have been brought in recent years, this case involved unique and untested

21   questions with respect to the TCPA's "prior express consent" defense.  Here, it was not claimed

22   that Payless purchased any third party lists of cell phone numbers for use in its text messaging

23   program.  Rather, Defendants claimed that Plaintiff and the class *voluntarily provided* their

24   telephone numbers directly to Defendants at the point of sale and that this constituted sufficient

25   consent to be contacted via telephone (Dkt. No. 35, Answer at ¶ 56) since they argued that under

26   FCC regulations "[p]ersons who knowingly release their phone numbers have in effect given their

27   invitation or permission to be called at the number which they have given" and that the provision

28   of a phone number "reasonably evidences prior express consent to be contacted at that number."

- 10 -

(Dkt. No. 20, Motion to Strike and Dismiss at p.4). Defendants further claimed that Plaintiff would be barred from arguing against the FCC's purported interpretation of "prior express consent." *See* 28 U.S.C. § 2342; *Leckler v. Cashcall, Inc*., 2008 WL 5000528, at *2-3 (N.D.Cal. Nov. 21, 2008) (Hobbs Act, 28 U.S.C. § 2342, in conjunction with judicial review provisions of Communications Act, 47 U.S.C. § 402(a), vests federal courts of appeals with exclusive jurisdiction to determine validity of final FCC orders). Defendants also argued that a litigated class could not be certified since the "prior express consent" issue would devolve into countless mini-trials as to how each customer provided his or her cell phone number to Defendants and what each customer was told or understood when providing the number.

With respect to Plaintiff's Second Cause of Action, Defendants claimed that the TCPA contains a safe harbor for companies that establish and implemented with due care practices and procedures to prevent persons from receiving calls who had listed their numbers on Do Not Call lists. 47 USC § 227(c)(5)(C). Defendants argued, and discovery revealed, that Payless did have a written Do Not Call List policy, leaving Plaintiff with a much weaker claim: that the written procedures were not *implemented* with due care. Defendants also argued that it only sent text messages to persons with whom Payless had a business relationship, i.e., Payless's customers, and thus could avail the "Established Business Relationship" or EBR defense to defeat the claims.

In addition, the Parties previously provided the Court with supplemental briefings addressing the various strengths and weaknesses of Plaintiff's claims. (See, Dkt. Nos. 61, 63, 70 and 72) Suffice it to say, while Class Counsel are confident in the strength of Plaintiff's claims, they are also cognizant of the risks inherent in proceeding without this Settlement. (Jacobs Fee Decl. ¶¶ 11-12.) Given the realities of the case (discussed below), the uncertainties of the law, the potentially harmful facts learned in discovery, the novelty of the issues remaining that underlie Plaintiff's claims, the assuredly vigorous defense that would be presented, and the number of affirmative defenses presented, the strength of Plaintiff's case could not justify rejection of this settlement.

The first factor (the strength of plaintiffs' case) favors approval of the settlement.

**B.**  ***The Risk Of Continued Litigation***

-11-

1    The second "fairness" factor this Court may consider is "the risk of continued litigation

2    balanced against the certainty and immediacy of recovery from the Settlement." *In re Omnivision*

3    *Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*,

4    213 F.3d 454, 458 (9th Cir. 2000)). "The Court should consider the vagaries of litigation and

5    compare the significance of immediate recovery by way of compromise to the mere possibility of

6    relief in the future, after protracted and expensive litigation." *Lipuma v. Am. Express Co.*, 406 F.

7    Supp. 2d 1298, 1323 (S.D. Fla. 2005); *see also Garner*, 2010 WL 1687832, *10 ("Settlement

8    avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a

9    prompt, certain, and substantial recovery for the Plaintiff class").  Further, this factor favors the

10   approval of a settlement where, as here, significant procedural hurdles remain, including

11   anticipated summary judgment motions, class certification, *Daubert* motions, and appeals.

12   *Garner*, 2010 WL 1687832, at *10 (citing *Rodriguez*, 563 F.3d at 966).

13           Here, it is certain that the expense, duration and complexity of the protracted litigation that

14   would result in the absence of settlement would be substantial.  Significant costs would be

15   expended by both Parties should this matter proceed to trial, including expenses for expert

16   witnesses and technical consultants relating to, *inter alia,* whether an ATDS was used to send the

17   messages, and the myriad of other costs that accompany the trial of a nationwide class action.

18   Yet, the added cost and burden of continued litigation would not necessarily produce better results

19   for the class; for instance, it is difficult to contemplate better injunctive relief than Payless's

20   agreeing to a complete stoppage of the text messaging practices that gave rise to the litigation.

21   Moreover, no matter how clear a violation, it is difficult to believe that a judgment of over $4

22   billion could be obtained and sustained on appeal for "technical" violations of a statute, especially

23   at this time when consumer claims lead such a difficult life in federal courts.

24           As a result, Plaintiff certainly faced a significant challenge in proving his case on the

25   merits.  Given the complexity of the issues, the defeated party would likely appeal.  As such, the

26   substantial and prompt relief provided to the class under the Settlement weighs heavily in favor of

27   its approval compared to the inherent risk of continued litigation, trial, and appeal.

28       **C.    *The Risk of Maintaining Class Action Status***

- 12 -

The Court certified, for settlement purposes only, a nationwide Settlement Class in the Preliminary Approval Order.  (Dkt. No. 76, ¶¶ 4-5.)  However, if the Court fails to grant final approval of the Settlement Agreement for any reason, the certification of the class will automatically become void.  (*Id.* ¶ 7)  Although Plaintiff and Class Counsel believe they would be successful in obtaining certification of an adversarial class absent the Settlement, Defendants have made it clear that in its absence they would vigorously oppose adversarial certification.  Further, even if Plaintiff were successful in a motion for class certification absent the Settlement, Defendants could move for decertification of the class before or during trial and likely would challenge certification on appeal. Fed. R. Civ. P.23(c)(1)(C).  Accordingly, this factor weighs in favor of approving the Settlement Agreement because if at any point the Class failed to become certified or if class certification was reversed, the Class would get nothing.

### D.      *The Amount Offered in the Settlement*

The amount of recovery offered by Defendants also strongly supports approval.  The reasonableness of the amount offered can be determined by comparing it to the maximum potential recovery if Plaintiff were to ultimately succeed at trial.  *See OmniVision,* 559 F. Supp. 2d at 1042 (finding a certain recovery of 6% of the potential recovery after accounting for attorneys' fees and costs to be reasonable and favor approval of the settlement).  However, it is well-settled that a settlement amounting to "only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).  Moreover, the certainty and relative immediacy of the benefits under the Settlement agreement, when compared with the risk associated with seeking more but receiving nothing, further justifies the reasonableness of accepting less than the maximum potential recovery.  See *OmniVision*, 559 F. Supp. 2d at 1042.

As noted above, Plaintiff and the Class have secured through this settlement <u>all</u> of the injunctive relief that they could possibly have sought through litigation.  And, with respect to statutory damages, the maximum potential recovery is, in a sense, largely illusory.  For instance, if Plaintiff was successful in proving Defendants violated the TCPA, Plaintiff and the approximate 8

- 13 -

1  million class members would be entitled to at least $500 per violation in statutory damages under

2  47 U.S.C. § 227(b)(3) and "up to"[5] $500 per violation under 47 U.S.C. § 227(c)(5).[6]  However,

3  such a "huge" recovery here is both infeasible and unrealistic.  It is infeasible because an award of

4  over $4 billion would pose a serious problem to Defendants' financial health and their ability to

5  pay a judgment.  It is unrealistic for the reasons noted earlier (i.e., it is difficult to believe that a

6  judgment that large could be obtained and sustained on appeal for technical violations of a

7  statute where no actual damages are sought) and because it likely raises serious due process issues.

8       Here, the $25 Merchandise Certificates represent a recovery of 5% of the maximum

9  potential recovery per class member, i.e., $500 in statutory damages.  When combined with the

10  injunctive relief that precisely targets the allegedly unlawful conduct at issue in the litigation, such

11  recovery provides truly meaningful benefit to the class.  Given the inherent risks of continued

12  litigation and possible non-payment discussed above, the reasonableness of the immediate

13  payment of $25 Merchandise Certificates, plus injunctive relief, is readily apparent.  *See Lipuma*,

14  406 F. Supp. 2d at 1323 ("[I]t has been held proper to take the bird in hand instead of a prospective

15  flock in the bush").  Accordingly, this factor too favors final approval of the Settlement.

16       **E.     *The Extent of Discovery Completed and the Stage of the Litigation***

17       The next factor allows the Court to consider both the extent of the discovery conducted to

18  date and the stage of the litigation as indicators of class counsel's familiarity with the case and

19  ability to make informed decisions.  *OmniVision*, 559 F. Supp. 2d at 1042 (citing *In re Mego Fin.*

20  *Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).  Where extensive discovery has occurred, it

21  is reasonable for the district court to conclude that Class Counsel fully grasped the merits of the

22  case prior to engaging in settlement or mediation.  *Rodriguez*, 563 F.3d at 967.

---

[5] Unlike § 227(b)(3), statutory damages under § 227(c)(5) are discretionary.

[6] Further, if Plaintiff was successful in demonstrating the willful violation of the TCPA, the Court has the discretion to treble the available damages. 47 U.S.C. § 227(b)(3). However, although treble damages are available under the TCPA, the Court need not factor their availability into its consideration of the reasonableness of the negotiated amount. *See Rodriguez*, 563 F.3d at 965-66.

- 14 -

1   The Parties' understanding of the factual and legal issues in this case is extremely well

2   developed.  Following the denial of Defendants' motions to dismiss the Complaint, the Parties

3   exchanged both formal and informal discovery, and when Class Counsel appeared at the mediation

4   with Judge Politan, they were intimately familiar with the applicable case law and were in

5   possession of sufficient discovery to intelligently negotiate the terms of the instant Settlement to

6   the ultimate benefit of each class.  The Declarations of Judge Politan and of John G. Jacobs, filed

7   in connection with the motion for attorneys' fees and expenses (Docket No. 53 specifically

8   address these matters and will not be repeated here.

9   Accordingly, this factor too favors approval of the Settlement.

10   **F.   *The Experience and Opinion of Counsel***

11   The next factor has the Court consider counsel's experience and views about the adequacy

12   of the Settlement.  *Garner*, 2010 WL 1687832, *14 (considering views of counsel that settlement

13   was fair); *see aslo OmniVision*, 559 F. Supp. 2d at 1043.  In fact, "[t]he recommendations of

14   plaintiff's counsel should be given a presumption of reasonableness." *OmniVision*, 559 F. Supp.

15   2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)); *Nat'l Rural*

16   *Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528-29 (C.D. Cal. 2004) ("Great weight is

17   accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

18   underlying litigation.").  Reliance on such recommendations is premised on the fact that "parties

19   represented by competent counsel are better positioned than courts to produce a settlement that

20   fairly reflects each party's expected outcome in the litigation."  *Rodriguez*, 563 F.3d at 967

21   (quoting *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

22   Class Counsel have regularly engaged in major complex litigation, and have had extensive

23   experience in prosecuting consumer class action lawsuits of similar size and complexity.  (*See* the

24   resumes of Class Counsel attached to the Motion For Preliminary Approval, Docket No. 53 .)

25   Through their investigation, review of discovery materials, litigation, mediation sessions, and the

26   settlement process, Class Counsel have gained an intimate understanding of the law and facts at

27   issue and have previously stated under oath their belief that the settlement is "fair, adequate, and

28

- 15 -

PLAINTIFF'S (CORRECTED) MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT        Case No. 3:09-CV-05142-EMC

1   reasonable." (Jacobs Fee Decl. ¶¶ 18, 26-27.)  This factor, therefore, also favors the Court's final

2   approval of the Settlement Agreement.

3        **G.**     *The Absence of Collusion Supports Approval*

4        This Court also must also consider the absence or presence of collusion between the

5   parties.  *Garner*, 2010 WL 1687832, *13.  "Before approving a class action settlement, the district

6   court must reach a reasoned judgment that the proposed agreement is not the product of fraud or

7   overreaching by, or collusion among, the negotiating parties."  *Id.* (quoting *Class Plaintiffs v. City*

8   *of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)).

9        In this case, both the terms of the Settlement and the evidence submitted in support

10  demonstrate a complete absence of collusion.   The Parties here have submitted sworn proof

11  detailing the steps taken in the mediation process that resulted in both the class relief and attorney

12  fee amount.    The instant Settlement was, in the words of Judge Politan, "negotiated aggressively,

13  in good faith and at arm's length and was not the product of collusion."  (Politan Decl. ¶ 10, part

14  of Docket No. 79.)  Moreover, this is not a case where fees are disproportionate to the class award

15  as in *In re Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 946-47 (9th Cir. 2011).   Unlike

16  Bluetooth, where fees represented 83.2% of the total value of the settlement, the fees here are

17  substantially below 25% of the total value of the Settlement.  (Dkt. No. 79; Jacobs Fee Decl. ¶¶

18  18-19.)  Here, the quality of the settlement negotiated and the reasonableness of the fees sought

19  collectively show that Class Counsel did not exchange potential class benefits for increased

20  attorney fees.  Accordingly, the Court should find that this process resulted in a Settlement free

21  from any taint of collusion.

22       **H.**     *The Presence of a Governmental Participant*

23       Although there were no "governmental coattails for the class to ride" in this case,

24  *Rodriguez*, 563 F.3d at 964, Defendants were nonetheless obligated to notify the Unites States

25  Attorney General and the appropriate state officials as a condition of obtaining Court approval.  28

26  U.S.C. § 1715.  *Garner*, 2010 WL 1687832, *14.  "Although CAFA does not create an affirmative

27  duty for either the state or federal officials to take any action in response to a class action

28  settlement, CAFA presumes that, once put on notice, state or federal officials will raise any

PLAINTIFF'S (CORRECTED) MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT     Case No. 3:09-CV-05142-EMC

1  concerns that they may have during the normal course of the class action settlement procedures."

2  *Id.*  Defendants timely complied with CAFA's notice requirement and provided the requisite

3  notice by April 11, 2011.   (Jacobs Final App. Decl. ¶ 14.)  No state of federal official has raised

4  any objection to the settlement.  (*Id.*)  Accordingly, this factor favors approval of the Settlement.

5           **I.     *The Reaction of Class Members***

6           The final factor in the Court's determination of the fairness, adequacy, and reasonableness

7  of the Settlement Agreement is the reaction of the class to the settlement.  *Kent v. Hewlett-*

8  *Packard Co.,No. 5:09-CV-05341-JF HRL,* 2011 WL 4403717, at *2 (N.D. Cal. Sept. 20, 2011).

9  "It is established that the absence of a large number of objections to a proposed class action

10  settlement raises a strong presumption that the terms of a proposed class action settlement are

11  favorable to the class members."  *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.*, 221 F.R.D.

12  523, 528-29 (C.D. Cal. 2004); *see also Kent*, 2011 WL 4403717,at *2 (finding that twenty-four

13  exclusions (.0543%) and eight objections (.017%) out of an estimated 45,000 class members was a

14  "positive response from the class weigh[ing] strongly in favor of approving the settlement"); *Wren*

15  *v. RGIS Inventory Specialists*, C-06-05778 JCS, 2011 WL 1230826, at *10 (N.D. Cal. Apr. 1,

16  2011) (0.02% objection rate "strongly supports approval of the settlement").  A complete lack of

17  objections from the class members to the Settlement Agreement further favors its approval.

18  *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004).

19           In this case, the court-approved notice procedures were fully implemented by the parties

20  and the Settlement Administrator, yet they yielded no objections and only one request for

21  exclusion.  (Hamer Decl. ¶ 9; Jacobs Final App. Dec. ¶ 14.)  In this day of professional objectors

22  (both ideologically and venally motivated) and cynicism about class actions, the fact that there is

23  but a single request for exclusion and not a single objection says much about the appropriateness

24  of granting final approval of the settlement and indicates that the class does not find the proposed

25  settlement problematic.  Plus, over 22,500 claims were submitted seeking monetary relief under

26  the settlement.  (Hamer Decl. ¶ 8.)   Accordingly, this and the other factors all favor this Court's

27  entering final approval of the settlement.

28                                              - 17 -

1    **V.      CONCLUSION**

2          For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval

3    to the settlement agreement, approve Class Counsel's request for attorneys' fees and expenses and

4    Class Representative incentive awards, enter the proposed Final Approval order separately

5    submitted herewith (which proposed order was also Exhibit F to the Settlement Agreement), and

6    grant such further relief the Court deems reasonable and just.

7

8    Dated: February 17, 2012                        Respectfully Submitted,

9                                                    MOHAMMAD KAZEMI, individually and on
                                                     behalf of a class of similarly situated individuals,
10

11                                                     /s/ John G. Jacobs                          _____

12                                                   John G. Jacobs (*Pro Hac Vice*)
                                                     Bryan G. Kolton (*Pro Hac Vice*)
13                                                   JACOBS KOLTON, CHTD.
                                                     122 South Michigan Avenue
14                                                   Suite 1850
                                                     Chicago, Illinois 60603
15
                                                     Jeffrey F. Keller (SBN 148005)
16                                                   Carey G. Been (SBN 240996)
                                                     Keller Grover, LLP
17                                                   1965 Market Street
                                                     San Francisco, California 94103
18

19

20

21

22

23

24

25

26

27

28

- 18 -

**CERTIFICATE OF SERVICE**

    I, John G. Jacobs, an attorney, certify that on February 21, 2012, I served the above and foregoing *Plaintiff's (Corrected) Notice of Motion and Motion for Final Approval of Class Action Settlement Agreement* by causing true and accurate copies of such paper to be filed and transmitted to the persons registered to receive such notice via the Court's CM/ECF electronic filing system.

         /s/  John G. Jacobs

- 19 -